[Cite as *Bretz v. Nagy*, 2016-Ohio-3008.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| ROBERT BRETZ, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2015-P-0082** |
| ANN M. NAGY, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Municipal Court, Ravenna Division, Case No. 13 CVF 03110 R.

Judgment: Affirmed.

*Robert Bretz,* pro se, 3784 State Route 303, Ravenna, OH 44266-9713 (Plaintiff-Appellant).

*Thomas R. Buchanan,* 206-B South Meridian Street, Ravenna, OH 44266-1102 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Robert Bretz, appeals from the judgment of the Portage County Municipal Court, Ravenna Division, overruling his objections to the magistrate's decision finding in favor of appellee, Ann M. Nagy, on her counterclaim for breach of contract and against appellant on his complaint for breach of contract. We affirm.

{¶2} On August 31, 2013, appellee sold her mother's mobile home to appellant. During their negotiations, appellee commented to appellant that she required a new roof

for her mobile home because it was leaking; she complained, however, the quotes she received from several roofers were too expensive, between $3,500 and $4,000. According to appellee, appellant, a roofer, stated he could do the job for half the price as well as install a new door for the home. Appellee maintained they entered an oral agreement in which she would pay appellant $2,000 for the roof and $200 for the door installation.

{¶3} After appellant finished the roofing job, appellee paid appellant $2,200; appellant later obtained a door for the mobile home, but it was the wrong size. Appellant placed the door in storage at appellee's residence. Appellant subsequently requested appellee pay an additional $940, which he claimed was the balance due on the installation of the roof. Appellee refused to pay.

{¶4} On October 31, 2013, appellant filed a small-claims complaint against appellee, alleging she owed him $800 on an oral contract to install a shingle roof on her mobile home; $140 for the uninstalled door, and $39.56 for locks he purchased as a result of a matter unrelated to the contract.

{¶5} On January 31, 2014, appellee filed an answer denying the allegations. And, with leave of court, she filed a counterclaim alleging breach of the same oral contract. Her counterclaim alleged that the roof had been installed in an unworkmanlike and defective manner because it had more leaks than before the installation. She further asserted she was entitled to a return of the $200 she paid appellant for the installation of the door. She asserted appellant had obtained a door that was the wrong size and had failed to remove or replace the same. As a result of the foregoing, appellee sought $5,675 in damages, which represent the money she paid appellant

($2,200) and the cost of removing the defective roof and installing a proper roof ($3,275).

{¶6} Appellee moved to transfer the case to the regular docket of the municipal court. Appellee asserted transfer was in the interests of justice and judicial efficiency because formal discovery was necessary to determine the validity of appellant's claim and that process is beyond the scope of the procedures of the small claims court. The trial court granted the motion.

{¶7} The matter came for trial on June 15, 2015. Appellant testified he is a self-employed contractor who had worked construction for 27 years. He confirmed he purchased a mobile home from appellee and eventually agreed to re-shingle her mobile home for $3,000. He acknowledged appellee paid him $2,200, but she refused to pay the remaining $800. He asserted he mailed appellee a statement of account for the balance, but appellee refused to pay.

{¶8} On cross-examination, appellant denied he agreed to install the new roof for $2,000. Appellant asserted he billed appellee for the door because she did not return it. He denied it was the wrong size, but testified he did not measure the door. He testified, upon commencing the roof installation, he inspected the roofing deck and noticed some of it had rotted near a sky light. He replaced this portion, but left the remaining deck because it "seemed satisfactory." And, appellant testified, he conferred with appellee regarding the roofing deck and "she said it was fine [because] [s]he was going to sell the place in two years." Appellant was shown various pictures depicting, inter alia, shingles installed in a crooked fashion; shingles that were not entirely secured; as well as shingles placed on and near a vent that were not sealed. Appellant,

however, denied the photographs were indicative of unworkmanlike and defective installation. Appellant nevertheless conceded he did not install ice guard before re-shingling the roof and that such an installation "maybe * * * should have been done."

{¶9} Appellee testified she and appellant agreed that appellant would install a new roof on her mobile home for $2,000 and install a new door on the trailer for $200. Appellee stated appellant dropped off a door at her residence, which was the wrong size. She testified she asked him to retrieve the door, but he did not do so. Appellant ultimately sought additional money from appellee for the roofing job; she testified she refused to pay because the additional request was not part of the original agreement.

{¶10} Appellee asserted that between five and six months after appellant finished the roof, she noticed approximately six new leaks in her ceiling. The leaks were documented by pictures showing moisture damage in the residence. She contacted a separate roofer, Jim Litsinger, to inspect the roof. Litsinger is a general contractor, specializing in commercial and residential roofing, with 30-years experience.

{¶11} Litsinger testified he closely examined the roof and took pictures of it. After his inspection, Litsinger noted appellant failed to install ice guard, a requirement for the low-pitch roof on appellee's mobile home. He also testified appellant failed to replace rotted roofing deck. He pointed to specific areas on the roof where appellant failed to properly install shingles such that they did not seal properly. He further noted an improperly installed vent pipe that was sealed inappropriately with shingles around the base. Litsinger testified that the foregoing defects would cause the roof to leak. Accordingly, he concluded the roof was not installed in a workmanlike manner or within the standards of the roofing industry.

4

{¶12} On June 15, 2015, the magistrate issued his decision ruling in appellee's favor in the amount of $1,450. Appellee filed objections, which she withdrew after calculating the cost of preparing a transcript. On July 2, 2015, appellant filed objections and later, on August 31, 2015, filed supplemental objections. Appellee moved to strike appellant's supplemental objections, which the court granted. The trial court ultimately overruled appellant's objections and adopted the magistrate's decision. Appellant now appeals, assigning five errors. His first assignment of error provides:

{¶13} "The trial court committed prejudicial error in granting defendant-appellee's Ann M. Nagy's motion to transfer case to municipal court's regular docket."

{¶14} Appellant argues the trial court abused its discretion in removing the case to the municipal court's regular docket because appellee's motion was unaccompanied by an affidavit that a good defense to the claim exists, in violation of R.C. 1925.10(B). He further asserts the motion was made out of rule because it was not filed at least five days prior to the scheduled trial date, in violation of Portage County Municipal Court Loc.R. 15.

{¶15} Although appellant's arguments are accurate, the amount appellee ultimately sought in her counterclaim exceeded the small claims court's jurisdictional amount of $3,000. *See also* R.C. 1925.02(A) ("A civil action that is duly entered on the docket of the small claims division *shall* be transferred to the regular docket of the court upon the motion of the court made at any stage of the civil action or by the filing of a counterclaim or cross-claim for more than three thousand dollars.") By necessity, therefore, the transfer was mandatory.

{¶16} Appellant's first assignment of error lacks merit.

5

{¶17} Appellant's second assignment of error provides:

{¶18} "The trial court committed prejudicial error in permitting appellee's answer."

{¶19} Appellant asserts the trial court erred by denying his motion to strike where appellee's answer failed to set forth the date she certified the proof of service, in violation of Civ.R. 5. Although the record answer does not include a date, it does include a certificate of service. While this is a technical violation of the rule, appellant does not identify how he was prejudiced by the omission. Appellant clearly received the pleading and does not dispute the answer was otherwise proper. We therefore discern no prejudicial error in the court's decision to permit the answer.

{¶20} Appellant's second assignment of error is without merit.

{¶21} Appellant's third assignment of error provides:

{¶22} "The trial court committed prejudicial error in denying plaintiff's motion and request for leave of court to file supplemental objections instanter."

{¶23} Appellant contends the trial court erroneously relied upon Civ.R. 6 in denying his motion to supplement objections instanter. He maintains this conclusion is contrary to law and plain error.

{¶24} Civ.R. 6(B) provides:

{¶25} When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any

6

action under Civ.R. 50(B), Civ.R. 59(B), Civ.R. 59(D), and Civ.R. 60(B), except to the extent and under the conditions stated in them.

{¶26} In this case, appellant filed timely objections, pursuant to Civ.R. 53(D)(3)(b)(i). Although he did not specifically request leave to file supplemental objections upon filing of the transcript, he advised the court he would supplement his original objections with a transcript. Appellant's advisement is not a request to supplement his objections once the hearing transcript was filed pursuant to Civ.R. 53(D)(3)(b)(iii); nevertheless, the trial court could have arguably permitted the supplemental objections pursuant to Civ.R. 6. Because, however, there are no specified time limitations for filing such objections, it does not appear the court could deny the motion under that rule. In this respect, appellant is arguably correct that the court's denial, based upon Civ.R. 6, is incorrect. Notwithstanding this conclusion, however, we conclude the error is harmless.

{¶27} A review of the motion demonstrates that, in large part, the supplemental objections simply provided greater detail to his original objections. To wit, appellant cited specific portions of the transcript that, in his view, augmented the persuasive force of his original objections. Appellant did include citations and arguments relating to federal and state building standards. These standards, however, were not admitted during trial; and, although appellant attempted to explore certain Housing and Urban Development regulations at trial, appellee's counsel objected for lack of a foundation. The objection was sustained and appellant did not make a proffer. Accordingly, any argument relying upon the state and federal building standards was not proper material for consideration by the trial court. Given these points, we hold appellant's supplemental objections, while giving greater nuance to his original objections, were

7

essentially cumulative. Any error in denying appellant's motion to supplement his original objections was therefore harmless.

{¶28} Appellant's third assignment of error lacks merit.

{¶29} We shall address appellant's fourth and fifth assignments of error together. They provide:

{¶30} "[4.] The trial court committed prejudicial error when it said plaintiff failed to prove his case by a preponderance of the evidence which is against the manifest weight of the evidence.

{¶31} "[5.] The finding of the court on defendant's breach of contract counterclaim was not supported by the law or facts."

{¶32} In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶12-23, the Supreme Court of Ohio held that the proper analysis for determining challenges to the manifest weight of the evidence is the same in civil and criminal cases, and that *State v. Thompkins*, 78 Ohio St.3d 380 (1997) applies to both. *Eastley* at ¶17-20. That standard provides: "'The [appellate] court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶33} The *Eastley* Court additionally noted that in weighing the evidence in civil cases, courts of appeals must make every presumption in favor of the finder of fact, and construe the evidence, if possible, to sustain the judgment of the trial court. *Eastley* at ¶21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

8

{¶34} Appellant initially argues the magistrate lost his way when he did not find in his favor regarding the $800 balance on appellee's account. He maintains the accounting statement he produced in evidence was specific regarding all the credits and debits between the parties. Thus, he asserts the magistrate's conclusion is against the weight of the evidence. We do not agree.

{¶35} While appellant produced a fairly detailed summary of appellee's account, the magistrate's decision was, in essence, a function of his determination that appellee's rendition of the negotiations was more persuasive than appellant's. Appellee testified that, after selling her mother's former mobile home to appellant, she explained her mobile home required a new roof. She testified, in a conversation with appellant, she was quoted prices between $3,500 and $4,000 which, in her view, were too expensive. According to appellee, appellant, a roofer, offered to roof her mobile home at half the price. Appellee testified she accepted the offer and the parties agreed appellant would install the new roof for $2,000. Although appellant testified they agreed to a price of $3,000, this conflict in testimony does not render the magistrate's conclusion a manifest injustice that stands against the weight of the evidence. Appellant's argument therefore lacks merit.

{¶36} Next, appellant contends the magistrate erred in not finding in his favor for reimbursement of locks he was required to purchase due to appellee changing the locks on the mobile home he purchased from her. He asserts appellee changed the locks after he took title to the trailer and thus the magistrate's decision is against the manifest weight of the evidence. Again, we disagree.

9

**{¶37}** Appellee testified that, even though she sold the trailer to appellant on August 31, 2013, he agreed to allow her 30 days to remove certain personal property from the dwelling. Appellee further testified appellant began moving in and remodeling the trailer well before this 30-day period expired. When she discovered this, she visited the home and noticed her belongings had been moved either to the front of the trailer or out onto the porch. And some of the items were damaged. Hence, she changed the locks on the trailer until she could remove the remaining belongings.

**{¶38}** Appellant disputes he entered an oral agreement allowing appellee 30 days to remove the belongings and claims he was entitled, as the legal owner, to move in at any time.

**{¶39}** The magistrate apparently disagreed with appellant's version of events and by implication determined appellee's testimony had greater persuasive force than appellant's. It is not uncommon, during negotiations for sale of a home, for a purchaser to allow the seller a grace period to remove belongings or finalize the process of moving out before taking occupancy. Appellant's claim for reimbursement relating to appellee changing the locks is necessarily premised upon the existence of such an oral agreement. Given appellee's testimony, the magistrate found such an agreement was entered. Hence, even though full legal title had transferred to appellant, the magistrate's conclusion that the parties agreed to give appellee a 30-day grace period, which appellant violated causing the locks to be changed, is not against the manifest weight of the evidence.

**{¶40}** Appellant next asserts the trial court erred in finding he breached the contract with appellee.

{¶41} Appellant contends there was no breach of contract in this matter because there was sufficient evidence that he installed appellee's roof in a workmanlike manner. He contests much of the testimony offered by appellee's expert, Jim Litsinger. He further underscores there was no evidence that the roof he installed triggered any new ceiling leaks. We do not agree.

{¶42} As discussed above, the parties agreed that appellant would install a new roof. Appellee alleged appellant failed to complete the installation in a workmanlike manner and therefore breached the parties' oral contract. "Common law imposes a duty upon contractors and builders to perform in a workmanlike manner." *Custer v. Commercial Builders & Floor Coverings,* 10th Dist. Franklin No. 89AP-117, 1989 Ohio App. LEXIS 3739, *3 (Sept. 26, 1989). "Workmanlike manner" is defined as "the customary way of doing or performing the work in the community where the work is to be performed. The test of workmanship is not what either party individually expects or would like. It is a performance of the work equal to that customarily done by others in the same trade in the same community or the same type of work." *Salewsky v. Williams*, 5th Dist. Stark No. CA-8131, 1990 Ohio App. LEXIS 4206, *9 (Sept. 17, 1990), citing 3 Ohio Jury Instructions - Civil, para. 253.04(4).

{¶43} Appellee presented evidence, through her expert, that certain shingles were uneven and had been improperly sealed. Litsinger further testified that the seal and shingles surrounding a vent pipe were improperly installed. Litsinger also stated appellant should have installed new ice guard and, although appellant disputed this assertion in his objections, he conceded he "maybe" should have done so. Litsinger unequivocally testified that such problems would cause the roof to leak. Moreover,

11

appellee provided testimony and photographs of water damage to her ceiling that was new and occurred after the roof's installation. Although appellant disputes Litsinger's opinions, these opinions demonstrate appellant's performance was not equal to that customarily done by others in the same trade. Appellant also asserts appellee did not offer unquestionable proof that the water damage was a result of problems with the roof; such proof, however, is not required to establish civil liability. We conclude appellee advanced sufficient evidence to establish, by a preponderance of the evidence, that the roof was installed in an unworkmanlike manner and she was entitled to damages.

{¶44} Appellant's fourth and fifth assignments of error lack merit.

{¶45} Appellant's sixth assignment of error provides:

{¶46} "The trial court erred in calculating the damages awarded to Nagy."

{¶47} Appellant does not specifically contest the amount of damages awarded by the trial court, but the fact the court awarded any damages to appellee. Appellant argues the magistrate erred in awarding damages because he assumed appellee's "ceiling leaks" were a result of "roof leaks" without any evidence to support this conclusion. And appellant asserts Litsinger's testimony was inadequate to establish this connection. As a result, the magistrate's award of $1,450 was against the manifest weight of the evidence. We do not agree.

{¶48} At trial, appellant opined that the ceiling leaks may be a result of condensation, rather than roof leaks. Litsinger testified condensation could not have caused the ceiling damage; rather, from his inspection of the roof and the various problems he observed, the damage was a result of roof leakage. Appellant argues Litsinger's testimony is flawed because he did not conduct a water test on the roof's

12

structure. Still, Litsinger's testimony was supported by photographs of damaged shingles, poor sealing, lack of ice guard, and his opinion that the installation fell below a workmanlike manner. Further, as discussed above, appellee testified the ceiling damage occurred *after* appellant installed the roof. Appellant did not attempt to rebut, let alone refute, this testimony. We maintain the foregoing evidence was sufficient to justify the trial court's award of damages in appellee's favor.

{¶49} Appellant's final assignment of error is without merit.

{¶50} For the reasons discussed in this opinion, the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed.


DIANE V. GRENDELL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

13